**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:09-CV-215-RJC-DCK**

| | |
|---|---|
| **UNITED HEALTHCARE SERVICES, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| ) | |
| **DAWN RICHARDS and EYEMED VISION CARE, LLC,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

     **THIS MATTER IS BEFORE THE COURT** on "Defendants' Joint Motion To Dismiss Amended Complaint" (Document No. 39). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be denied.

## I. BACKGROUND

     Plaintiff United Healthcare Services, Inc. ("Plaintiff" or "UHC") filed its "Complaint" (Document No. 1) in this action on May 29, 2009. "Defendants' Joint Motion To Dismiss The Complaint" (Document No. 25) was filed on July 20, 2009. On December 3, 2009, the undersigned granted Plaintiff's "Motion For Leave To File Amended Complaint" (Document No. 32) and recommended that the "Defendants' Joint Motion To Dismiss..." (Document No. 25) be denied as moot. The "Amended Complaint" (Document No. 38) was filed on December 14, 2009, and the now

pending "Defendants' Joint Motion To Dismiss Amended Complaint" (Document No. 39) was filed on December 31, 2009.

According to the Amended Complaint, Defendant Dawn Richards ("Richards") has breached and threatens to breach contractual duties to Plaintiff, her former employer. The Amended Complaint further alleges that Defendant Eyemed Vision Care, LLC ("Eyemed"), Richards subsequent employer, is liable for tortious interference with contractual and prospective economic advantage for intentionally inducing and participating in Richards' breach of agreements.

Among other businesses, Plaintiff engages in selling and managing vision care benefits, and in providing claims processing services to its members, employer customers and healthcare providers. Plaintiff is a wholly owned subsidiary of United Health Group Incorporated ("UHG"), which is a health care management company. Plaintiff is the operating company and the technical "employer" for all UHG employees. Both Plaintiff and UHG are Minnesota corporations.

A substantial portion of the acts complained of took place in Weddington, North Carolina, where Richards worked out of her home. Richards began her employment with Plaintiff in January 1995 as an Account Executive. Richards was responsible for generating new business from employers, municipalities and health plans, and for servicing existing business assigned to her by Plaintiff. Richards was also responsible for maintaining relationships with existing customers.

Plaintiff underwent a reorganization in late summer 2007, after which Richards was tasked solely with generating new business and was no longer responsible for maintaining existing relationships. Prior to the reorganization, Richards worked for Spectera, Inc. ("Spectera"), a wholly-owned subsidiary of OptumHealth, Inc., which is a subsidiary of Plaintiff. After the reorganization, Richards worked as a Senior Sales Executive in the OptumHealth Specialty Benefits division. At

the close of her employment with Plaintiff, Richards was responsible for generating new business in Kentucky, North Carolina, South Carolina, Virginia, and West Virginia.

On December 11, 2008, Richards gave Plaintiff notice of her intent to resign, to be effective December 24, 2008. The Amended Complaint alleges that Richards e-mailed dozens of customer contacts within hours of her notice of resignation informing them of her decision, and further informing at least some of those contacts that she was joining a competitor and would be in touch soon.

The Amended Complaint bases its claims against Defendants on two Stock Appreciation Rights Awards (Document 38-1 & 38-2) and a Restricted Stock Unit Award (Document 38-3) (together, "stock awards") issued on May 28, 2007 and June 5, 2008. Plaintiff contends that these stock awards reflect "agreements" between Plaintiff and Richards. The stock awards were granted to Richards by UHG, Plaintiff's parent corporation. The awards reflect terms between Richards and the "Company" – meaning UHG, and/or UHG and its subsidiaries and affiliates, depending on one's interpretation.

It is undisputed that each of the stock awards contains a Restrictive Covenants provision which defines the "Company" as "United HealthGroup and all of its subsidiaries and other affiliates." The Restrictive Covenants include confidentiality and non-solicitation requirements that Richards is alleged to have breached. Plaintiff contends that Richards executed the stock awards (or agreements) in connection with her employment with it, and that they are valid and binding contracts between itself and Richards. Plaintiff also asserts that UHG intended that Plaintiff benefit from the Restrictive Covenants and that Plaintiff have the ability to enforce its rights under the Restrictive Covenants.

Defendants move to dismiss the Amended Complaint with prejudice, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## II. STANDARD OF REVIEW

Plaintiff has the burden of proving that subject matter jurisdiction exists. See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). As standing "is a fundamental component of a court's subject-matter jurisdiction," a plaintiff's standing may be properly challenged by way of a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Dash v. FirstPlus Home Loan Trust 1996-2, 248 F.Supp.2d 489, 501 (M.D.N.C. 2003). The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, 945 F.2d at 768. See also, Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Where, as here, a motion to dismiss pursuant to 12(b)(1) is based on allegations that a complaint fails to establish standing, "the standard of review applicable to Rule 12(b)(6) motions will be applied to Defendants' motions pursuant to Rule 12(b)(1)." Tingley v. Beazer Homes Corp., 3:07-CV-176-MR, 2008 WL 1902108 at *2 (W.D.N.C. Apr. 25, 2008).

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009), quoting Twombly, 550 U.S. at 570; see also, Robinson v. American Honda Motor Co., Inc., 551

F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(citations omitted).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

In seeking dismissal of this action, Defendants principally contend that Plaintiff lacks standing to enforce the stock awards and that the Restrictive Covenants in the stock awards are unenforceable for a failure of consideration. (Document No. 39). The undersigned will briefly address the arguments, but essentially finds that Plaintiff has stated a sufficient case to survive a motion to dismiss. Whatever may happen as the case proceeds, under applicable law, it is simply premature to end the litigation.

## A. Consideration

Defendants contend that the stock awards provided only "illusory" consideration to Richards and therefore the Restrictive Covenants are unenforceable against her. Defendants argue that because her stock appreciation rights and restricted stock units vested over time, her consideration was illusory and only an "expectation of rights in the future." In making this argument, Defendants rely almost entirely on <u>MSC Industrial Direct Co., Inc. v. Steele</u>, 682 S.E.2d 248, 2009 WL 2501762 (N.C. App., Aug. 18, 2009), an unpublished North Carolina Court of Appeals decision.

Plaintiff responds that Richards was provided valuable consideration for the stock awards in the form of stock appreciation rights and restricted stock units. Richards' resignation prior to most of her interest in the awarded stock vesting, and/or the decrease in the value of the stock, do not necessarily negate the fact that consideration was provided.

In any event, the undersigned does not find that Defendants' arguments on this topic are sufficient to support a decision at this stage that Plaintiff has failed to make a plausible claim for relief.

## B. Third Party Beneficiary

Defendants' primary argument for dismissal is that Plaintiff is not a party to the stock awards and therefore cannot enforce any rights granted under those awards. Plaintiff responds that it was a party to the stock award agreements or, at bare minimum, a third party beneficiary to the Restrictive Covenants. (Document No. 43). In the alternative, Plaintiff suggests that it would be logical and appropriate for the Court to add UHG as a party.[1]

---

[1] At this point, the undersigned need not determine whether such a step would be logical or appropriate, but the suggestion certainly begs the question why Plaintiff has twice declined to include UHG, which is clearly a party to, and entitled to seek enforcement of, the stock awards.

Plaintiff contends that Defendants' notion that UHG has exclusive rights to enforce the covenants is at odds with the intent of the parties to cover Plaintiff as a subsidiary, and that dismissal is inappropriate where the circumstances surrounding the formation and execution of the stock awards is relevant to determining whether Plaintiff is a third party beneficiary.

In short, the parties strongly disagree as to the *intent* of the parties in executing the stock award agreements, particularly concerning the rights, if any, of Plaintiff related to those awards. The parties do seem to agree that <u>Raritan River Steel Co. v. Cherry, Bekaert & Holland</u>, 329 N.C. 646, (1991), is an important case articulating the test for determining the rights of a third party beneficiary.

> North Carolina recognizes the right of a third-party beneficiary to sue for breach of a contract executed for his benefit. Ordinarily "'the determining factor as to the rights of a third-party beneficiary is the intention of the parties who actually made the contract. The real test is said to be whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts.' It is not sufficient that the contract does benefit him if in fact it was not intended for his direct benefit."

<u>Raritan River Steel</u>, 329 N.C. at 651. <u>Raritan</u> went on to state that "[t]he Court, in determining the parties' intentions, should consider circumstances surrounding the transaction as well as the actual language of the contract." <u>Id.</u> at 652.

Defendants contend that the stock awards only identify UHG as having rights to redress a breach because the term "Company" in the context of the remedies provision only referred to UHG. Plaintiff counters that the broader definition of "Company" applies because the remedies provisions explicitly reference the Restrictive Covenants. The undersigned finds that a determination of how the defined term "Company" was intended to be used in various provisions is subject to different

interpretations on the face of the documents, but may be an area in which discovery regarding the circumstances surrounding the transaction will better inform a finder of fact.

At this stage of the litigation, the undersigned is guided by the familiar standard of review, including particularly the requirement that the complaint only be legally sufficient, and that the Court need not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." See Republican Party of N.C. v. Martin, 980 F.2d at 952.

Viewing the Amended Complaint in the light most favorable to Plaintiff, the undersigned is persuaded that Plaintiff has asserted "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. at 1960. Specifically, it is undisputed that: (1) Plaintiff is a subsidiary of UHG; (2) the stock awards' Restrictive Covenants were intended to apply to UHG and "all of its subsidiaries and other affiliates"; (3) at all times relevant to this action Richards was an employee of one or more of UHG's subsidiaries; and (4) Richards accepted, and was a party to, the stock awards. In addition, Plaintiff has included facts supporting its allegations, which if true, would appear to support the claim that Richards violated the Restrictive Covenants she had purportedly agreed to honor. As such, Plaintiff makes a plausible claim that *at minimum* it is a third party beneficiary to the stock awards and that Defendants may be liable for their alleged misconduct.

Based on the foregoing, the undersigned cannot recommend that this action be dismissed at this early stage of the litigation. The undersigned finds that Plaintiff has stated a plausible claim for relief – all that it is required to do at this point – and will therefore respectfully recommend that the pending motion to dismiss be denied.

## IV. RECOMMENDATION

**IT IS, THEREFORE, RECOMMENDED** that "Defendants' Joint Motion To Dismiss Amended Complaint" (Document No. 39) be **DENIED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Robert J. Conrad, Jr.

**IT IS SO RECOMMENDED**.

Signed: July 2, 2010

David C. Keesler
United States Magistrate Judge