<pre>
                    UNITED STATES DISTRICT COURT FOR THE
                    WESTERN DISTRICT OF NORTH CAROLINA
                              CHARLOTTE DIVISION
                                   3:96cv215
</pre>

| | | |
|---|---|---|
| **United Healthcare Services, Inc.**, | ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **ORDER** |
| **Dawn Richards and EyeMed Vision Care, LLC** | ) ) ) ) | |
| Defendants. | ) ) ) | |

## I. INTRODUCTION

Plaintiff filed its Complaint in this action on May 29, 2009, which was amended on December 14, 2009. The defendants filed a Joint Motion to Dismiss the Amended Complaint on December 31, 2009. (Doc. No. 39). By Memorandum & Recommendation ("M&R"), the Magistrate Judge recommended denial of the Motion to Dismiss. (Doc. No. 46). The defendants made timely objections, (Doc. No. 47), which are now before the Court.

After *de novo* review of the portions of the M&R to which the defendants object, and taking all well-pleaded allegations as true and in a light most favorable to the plaintiffs, this Court **DENIES** the motion to dismiss Plaintiff's claims for the reasons set forth herein.

## II. STANDARD OF REVIEW

The Federal Magistrate Act provides that "a district court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). "By contrast, in the absence of a timely filed objection, a district court need not

conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note). Similarly, de novo review is not required by the statute "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id. Moreover, the statute does not on its face require any review at all of issues that are not the subject of an objection. Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby, 718 F.2d at 200. Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly the Court has conducted a careful review of the Magistrate Judge's M&R.

In its review of a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs, Inc. v. Matakari, 7 F.3d 1130, 1134 (4th Cir. 1993), and should grant the motion only where "it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." Id.; see also Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000) (a motion to dismiss tests the "legal sufficiency of the complaint"). A complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

**III. FACTUAL BACKGROUND**

Defendants do not specifically object to the findings of fact as set forth in the M&R; this Court therefore adopts the facts as set forth in the M&R for purposes of resolving these motions.

**IV. ANALYSIS**

The defendants make three objections to the M&R, all of which are insufficient to convince this Court that Plaintiff's complaint should be dismissed.

### A. Objection to the M&R's Finding that Defendants May be Liable for Violation of the Restrictive Covenants at Issue as Unenforceable

The M&R concluded that Plaintiff makes a plausible claim that Defendants may be liable for their alleged misconduct in violating the Restrictive Covenants. (Doc. No. 46 at 8). Defendants argue that even if Plaintiff had standing to enforce the Restrictive Covenants (which they dispute), the covenants cannot be enforced, as a matter of law, because they go beyond the protection of Plaintiff's legitimate interests by protecting UnitedHealthGroup (UHG) and "all of its subsidiaries and affiliates." (Doc. No. 1-2 at 5). Defendants argue this violates the requirement that such covenants be "no wider in scope than is necessary to protect the business of the employer." Medical Staffing Network, Inc. v. Ridgway, 670 S.E.2d 321, 327-28 (2009).[1]

Restrictive Covenants, although disfavored by courts, are enforceable if they serve a legitimate employer interest and are no broader than necessary to protect that interest. See, e.g., Ridgway, 670 S.E.2d at 327; Vital Images, Inc. v. Martel, 2007 WL 3095378, *3 (D. Minn. Oct.

---

[1] The May 28, 2007 Stock Appreciation Rights Award, the June 5, 2008 Stock Appreciation Rights Award, and the June 5, 2008 Restricted Stock Unit Award all contain Minnesota choice of law provisions. However, each side relies on both Minnesota and North Carolina law, so to the extent that there is no conflict between the two states or any dispute between the parties on which law to apply, this Court need not determine the reach of the choice of law provisions at this stage.

19, 2007). The reasonableness of a non-compete agreement is a matter of law for the courts to decide, so the question here is whether the Restrictive Covenants invoked by Plaintiff are enforceable as a matter of law; if not, then the magistrate judge improperly denied Defendants' motion to dismiss. See MJM Investigations, Inc. v. Sjostedt, 698 S.E.2d 202, 2010 WL 281453 (2010) (unpublished).

The third provision of the non-solicitation covenant states that for two years, Richards may not "[i]nduce or influence any Company employee, consultant, customer or provider to terminate his, her, or its employment or other relationship with UnitedHealthGroup." (Doc. No. 1-2 at 6). The North Carolina Court of Appeals has held that a client-based limitation, such as the provision at issue here, "cannot extend beyond contacts made during the period of the employee's employment." Farr Assocs., Inc. V. Baskin, 530 S.E.2d 878, 883 (2000); see also Ridgway, S.E.2d at 327- 28 (concluding that the plaintiff had no legitimate business interest in, *inter alia*, foreclosing solicitation of clients of "an unrestricted and undefined set of [the plaintiff's] affiliate companies" and that the Restrictive Covenants were unenforceable).

This Court first observes that the non-solicitation provision at issue meets the requirement of being designed to serve a legitimate employer interest because Richards's employment requires her to develop relationships with her customers, and so Plaintiff risks losing a customer if Richards maintains that relationship after leaving Plaintiff's employment. However, this provision is unreasonable on its face and thus unenforceable because the language clearly extends beyond customers made during the period of Richards's employment. Not only does the provision fail to limit its reference to "customer[s]" to those customers with whom Richards had contact, but it also is unclear whether a "customer" is someone who was a customer at the time the agreement was executed, when Richards left Plaintiff's employment, or

4

at any time during the two-year period following Richards's departure.  Further, because "customer" is not defined, it could include customers of all UHG's affiliates and subsidiaries. This provision is unduly vague on its face, which renders it unenforceable.  Although North Carolina courts have upheld client-based restrictions that included clients with whom the employee had no personal contact, see Triangle Leasing Co., Inc. V. McMahon, 393 S.E.2d 854, 856 (1990); Wade S. Dunbar Ins. Agency, Inc. V. Barber, 147 N.C. App. 463, 469 (2001), the meaning of "client" and "customer" in those cases referred to an identifiable group of people and was smaller in scope than here.

However, the Restrictive Covenants also contain other provisions that are more narrow than the third provision of the non-solicitation covenant; specifically, the first provision of the non-solicitation covenant prohibits Richards from engaging in competitive business activity with any person or entity, but only to the extent that Richards "had contact to further the Company's business or ... performed services, or supervised the provision of services" during employment. (Id.).  Likewise, the non-disclosure of confidential information covenant is limited to information that Richards was given access to during the course of her employment.  (Id.). Unlike the unreasonably vague provision discussed above, these provisions are reasonable and limited in scope.  Plaintiff has alleged that Richards violated these narrower provisions. (Doc. No. 38 at ¶¶ 83-86).  Under both Minnesota and North Carolina law, the "blue pencil doctrine" allows a court, at its discretion, to modify an unreasonable non-compete agreement to make it enforceable when the contract is separable, and one part is reasonable.  See Vital Images, Inc., 2007 WL 3095378, at *4 (modifying non-compete provision to include geographical limitation and upholding as enforceable with modifications); Whitaker General Medical Corp. v. Daniel, 379 S.E.2d 824, 828 (finding that overly broad section of restrictive covenant was separable and

5

enforcing the remainder of the contract). Here, the reasonable provisions are separable from the unreasonable provision, and so the Amended Complaint should not be dismissed in its entirety.

      **B.**      **Objection to the M&R's Finding that the Term "Company" is Subject to Different Interpretations, Potentially Providing Plaintiff with Legal Remedies.**

The M&R concluded that the intent of the term "Company" was subject to different interpretations on the face of the documents, and so it is possible that Plaintiff is a party to the Stock Awards, or a third party beneficiary to the Restrictive Covenants. See (Doc. No. 46 at 6-7). Defendant contends that the language of the awards clearly reflects an intent that UHG, and not Plaintiff, be the sole party capable of enforcement because each of the remedies sections uses the term "Company" to mean "UnitedHealthGroup Incorporated." (Doc.47 at 9). Plaintiff responds that giving UHG exclusive rights to enforce the covenant is at odds with the language of the awards and the intent of the parties to cover Plaintiff as a subsidiary. See (Doc. No. 48 at 6-7).

In accordance with well-established principles of contract interpretation, this Court first examines the plain language of the awards to determine if there is any textual ambiguity. The first sentence of each award defines the term "Company" as UnitedHealthGroup (the issuer of the stock award). However, the awards also state that "[f]or purposes of the Restrictive Covenants, the "Company" means UnitedHealthGroup and all of its subsidiaries and other affiliates." In a final twist, each of the remedies sections in the awards refers only to the "Company" in discussing legal remedies for a breach of the Restrictive Covenants. As a whole, these statements present an ambiguity in the remedies provisions' reference to the Restrictive Covenants; specifically, it is unclear whether the broader definition of "Company" that encompasses UHG's subsidiaries and affiliates should apply or whether the remedies provisions

invoked refer only to UHG itself.

Consequently, this Court next evaluates the intent of the parties in executing the awards, particularly whether Plaintiff has any rights related to those awards. See [State v. Phillip Morris, USA, Inc., 363 N.C. 623, 631 (2009)](); [Raritan River Stell Co. v. Cherry, Bekaert & Holland, 329 N.C. 646, 652 (1991)](). The parties are in stark disagreement about the intent of the parties. Plaintiff's Amended Complaint states that:

> UHG intended that [Plaintiff] benefit from the Restrictive Covenants contained in the May 28, 2007 Stock Appreciation Rights Award, the June 5, 2008 Stock Appreciation Rights Award, and the June 5, 2007 Restricted Stock Unit Award. UHG also intended that [Petitioner] have the right to enforce its rights under the Restrictive Covenants.

(Doc. No. 38 ¶ 35). The defendants argue that the text contradicts the assertion that UHG "intended" to confer any rights on Plaintiff, but that any ambiguity should be construed against Plaintiff as a third party beneficiary under Raritan River Steel. (Doc. No. 47 at 10-11). This Court notes that in [Raritan River Steel](), where the court found that the plaintiff was not an intended third party beneficiary, both of the parties to the contract at issue testified that there was no intent to benefit the Plaintiff in that case, who was not even aware that the contract was being performed and was not a subsidiary of any party to the contract. [329 N.C. at 653](). In contrast, this plaintiff is a subsidiary of one party to the contract (UHG) and employed the other party (Richards). In the light most favorable to Plaintiff, this Court finds that the Amended Complaint asserts enough facts to support a plausible claim that UHG intended Plaintiff to benefit from and enforce the Restrictive Covenants, so it should not be dismissed on this ground.

### C. Objection to the M&R's Finding that Defendants had not Established that the Stock Awards Provided only Illusory Consideration

The M&R concluded that the defendants' argument that the consideration received by Richards was illusory was insufficient to warrant dismissal of Plaintiff's claim. Relying on [MSC]()

7

Industrial Direct Co., Inc. v. Steele, 682 S.E.2d 248, 2009 WL 2501762 (N.C. App., Aug. 18, 2009) (unpublished), Defendants contend that the consideration was indeed illusory because the employer retained the authority to withdraw the rights promised in the awards by terminating Richards. (Doc. No. 47 at 12). Plaintiff argues that if Defendants' claim were true, then many other forms of recognized consideration provided to at-will employees, such as raises, promotions, and training, would also be illusory. See Hejl v. Hood, Hargett & Assoc., Inc. 674 S.E.2d 425, 428-29 (N.C. App. 2009).

As an unpublished decision, MSC is not controlling, N.C. R. App. P. 30(e)(3), and Defendants have not provided any Minnesota authority for finding that the consideration here was illusory. Moreover, MSC is distinguishable from the instant case because the stock grant that was to serve as part of the consideration for the Restrictive Covenant in MSC was transferred into the employee's account more than thirty days before the agreement was signed. 2009 WL 2501762, at *4. Finding that at the time the grant of shares was given, the employee had no rights to the shares, merely an expectation of rights in the future, the Court of Appeals held that the grant was illusory. Id. Here, the appreciation rights and stock units were given to Richards when the awards were executed, not before, so they were not "merely an expectation of rights in the future." See id. Thus, Defendant has not established that Plaintiff has no plausible claim for relief on this claim.

V. CONCLUSION

After its *de novo* review of the defendants' 12(b)(6) Motion to Dismiss and the Plaintiff's Amended Complaint, and viewing all well-pleaded allegations in light most favorable to the plaintiffs, this Court denies the Motion to Dismiss..

**SO ORDERED**.

Signed: September 30, 2010

Robert J. Conrad, Jr.
Chief United States District Judge